UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANDERSON JOAQUIM DA FONSECA,

                Petitioner,

v.

                                            Civil No. 2:26cv395

PAUL PERRY, et al.,

                Respondents.

## MEMORANDUM ORDER

On April 22, 2026, Anderson Joaquim da Fonseca ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 alleging that he is entitled to release from immigration custody or a bond hearing under 8 U.S.C. § 1226(a). ECF No. 1. On May 4, 2026, the Federal Respondents filed an opposition to the Petition. ECF No. 6. On May 15, 2026, Petitioner filed a reply, ECF No. 7, which he later supplemented, ECF No. 8. For the reasons explained below, Petitioner's habeas motion seeking immediate release or a bond hearing is **DENIED**.

## A. Background

According to a sworn Declaration submitted by the Federal Respondents,[1] Petitioner is a 37-year-old native and citizen of Angola who was admitted to the United States in September 2024 on a six-month tourist visa. ECF No. 6-1, at 2. Shortly after his

---

[1] Petitioner's reply brief and later supplement do not contest the facts set forth in the Declaration.

arrival on this temporary visa, Petitioner filed an application for asylum. Id. Petitioner did not leave the United States in March 2025 when his tourist visa expired; instead, he overstayed his authorized admission. Id. However, in October 2025, Petitioner left the United States and traveled to Angola. Id. On November 3, 2025, three weeks after leaving the United States, Petitioner attempted to return via airplane, unsuccessfully seeking entry through Dulles International Airport. Id. at 3. Petitioner initially claimed to be a tourist and presented his expired temporary visa, but upon secondary questioning, he admitted that he had overstayed his prior admission and was seeking reentry to live and work in the United States. Id. Petitioner's tourist visa was cancelled and he was taken into immigration custody and issued a notice and order of expedited removal. Id.

In response to his immigration seizure, Petitioner claimed a fear of returning to Angola, triggering a "Credible Fear Interview" pursuant to 8 U.S.C. § 1225(b)(1)(A)(ii).[2] After additional proceedings associated with Petitioner's pursuit of asylum, on April 23, 2026, the immigration court denied all of Petitioner's requests for relief and ordered him removed to Angola.

---

[2] Petitioner's supplement reports the recent tragic murder of his mother in Angola and includes character references. ECF Nos. 8, 8-1. Though these materials reflect positively on Petitioner, this Court is called on to resolve the lawfulness of the challenged immigration detention, a legal question that does not turn on Petitioner's character or the validity of his asylum claim.

Id. at 4.  On May 15, 2026, Petitioner filed an appeal to the Board of Immigration Appeals ("BIA"), id., meaning that his outstanding removal order is not yet "final."  Lopez v. Bondi, 167 F.4th 223, 227 (4th Cir. 2026).

## B. Discussion

### 1. Interplay between § 1225 and § 1226

The Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."  Landon v. Plasencia, 459 U.S. 21, 32 (1982) (emphasis added).  In Romero v. Crawford, No. 3:25cv788, 2026 WL 94634 (E.D. Va. Jan. 13, 2026), Ponce Vidal v. Crawford, No. 2:26cv134, 2026 WL 561188 (E.D. Va. Feb. 27, 2026), and countless similar cases, federal judges have grappled with the interplay and constitutional application of 8 U.S.C. § 1225(b) and § 1226(a), two statutes governing immigration detention procedures.

Historically, § 1225(b) and its mandatory detention provisions applied to noncitizens stopped at an international border.  In contrast, § 1226(a) and its discretionary detention provisions applied to noncitizens physically present within the United States, even if unlawfully.  However, in 2025, the government, first through an internal memo and later through a decision by the BIA, Matter of Yajure Hurtado, 29 I&N Dec. 216

3

(BIA 2025), announced a new interpretation of § 1225(b). Based on this new interpretation, "nearly all noncitizens who entered the United States without inspection" and who are later found anywhere in the United States are subject to mandatory detention without a bond hearing under § 1225(b) regardless of how long they have been physically present. Ortega Miranda v. Bondi, No. 3:25cv769, 2026 WL 287179, at *3 (E.D. Va. Feb. 3, 2026) (citation omitted).

Notwithstanding this updated administrative interpretation of the law, the majority of district court judges, including the undersigned, have held that noncitizens found within the United States after years of residency are entitled to a discretionary bond hearing under § 1226(a).[3] See, e.g., Ponce Vidal, 2026 WL 561188, at *2-3 (ordering a § 1226(a) bond hearing and noting that the petitioner, who "resided in the United States for at least a decade" before his immigration detention, "unquestionably ha[d] due process rights"); Aroca v. Mason, 819 F. Supp. 3d 517, 544 (S.D.W. Va. 2026) (finding that the petitioner's interpretation of § 1225 and § 1226 "align[ed] with longstanding constitutional principles" recognizing that "[n]oncitizens physically present in

---

[3] Federal judges do not unanimously agree on the issue, as evidenced by a recent circuit split. Compare Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502 (5th Cir. 2026), and Avila v. Bondi, 170 F.4th 1128, 1138 (8th Cir. 2026), with Barbosa da Cunha v. Freden, 175 F.4th 61, 96 (2d Cir. 2026), and Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026).

4

the United States, whether lawfully or unlawfully, are entitled to greater due process protections than those stopped at the border").

In contrast, noncitizens stopped "at the threshold of initial entry" into the United States may be permissibly detained under § 1225(b)(1) without the right to a bond hearing. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 107, 139 (2020) ("When an alien arrives at a port of entry — for example, an international airport — the alien is on U.S. soil, but the alien is not considered to have entered the country."). This default detention rule rests on the "fundamental proposition[]" that the power "to admit or exclude aliens is a sovereign prerogative" and that necessarily implies "the power to set the procedures to be followed in determining whether an alien should be admitted." Id. (quotation marks omitted). Accordingly, noncitizens stopped at the threshold enjoy fewer procedural protections than individuals who have continuously resided in the United States for many years. That said, neither the Supreme Court nor the undersigned have held that individuals stopped at the border lack all due process rights such that they may be detained indefinitely. See Leke v. Hott, 521 F. Supp. 3d 597, 602 (E.D. Va. 2021) ("Consider that, if the Fifth Amendment did not apply to protect against prolonged and indefinite detention, then an arriving alien could thus be held without a bond hearing for 5 years, 10 years, or even life.

Surely, no one would argue that prolonged and indefinite detention of this sort is constitutionally appropriate.").

### 2. Petitioner's Seizure at the Threshold

Here, unlike in Romero, Ponce Vidal, and other cases where a noncitizen was "found" in the United States after years of unlawful presence, Petitioner was stopped at the threshold and taken into § 1225(b)(1) custody attempting to enter the United States using a tourist visa that had expired earlier the same year. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation."[4]   Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). Noncitizens that are "covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process."   Id.  (quoting § 1225(b)(1)(A)(i)). Petitioner was initially placed in this expedited process, but through pursuing asylum, he secured additional procedural protections attendant to more robust immigration proceedings.

While Petitioner secured the benefit of a more searching immigration process, the controlling statute expressly provides that noncitizens stopped at the threshold "shall be detained"

---

[4] Petitioner does not assert that, at the time he left the United States or at the time that he attempted to return, he had any valid immigration documentation or "status" permitting him to be present in the United States, even on a temporary basis.  Petitioner also fails to offer any argument (beyond a single conclusory sentence, ECF No. 1, at 6) suggesting that his detention is governed by any statute other than § 1225(b)(1).

during "further consideration" of asylum applications. Id. (quoting § 1225(b)(1)(B)(ii)). This default period of detention, though mandatory by its unambiguous language, is not absolute as "the Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under § 1225(b)(1) . . . ." Id. at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)). Additionally, the § 1225(b)(1) detention period is not indefinite; it ends when "specified events take place"; namely, the final resolution of the asylum application. Id. at 311.

Here, Petitioner argues that his immigration detention under § 1225(b)(1) for a period of seven months is unconstitutional because it exceeds the six month "presumptively reasonable" detention period recognized by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001). ECF No. 7, at 2-3. However, Zadvydas involved the interpretation and application of a different immigration statute with text materially different from § 1225(b)(1). Importantly, as discussed in the Supreme Court's subsequent ruling in Jennings, nothing in the text of § 1225(b)(1) (the provision applicable here) supports a statutory interpretation requiring a bond hearing after a non-citizen has been detained for longer than six months. See Jennings, 583 U.S. at 300 ("Zadvydas's reasoning is particularly inapt here because there is a specific provision authorizing [humanitarian] release

7

from § 1225(b) detention whereas no similar release provision applies to [the statute at issue in Zadvydas]"). Furthermore, "[i]n later cases, the Supreme Court confirmed th[e] narrow understanding of Zadvydas, stressing that the constitutional concern of endless civil detention was the driving force behind its holding," a concern that loses force when civil detention has a clearly identifiable end point. Castaneda v. Perry, 95 F.4th 750, 757 (4th Cir. 2024).

Here, the governing statute provides for release for urgent humanitarian reasons; the fact that Petitioner, in this specific case, may not qualify for this limited safety valve does not undermine the constitutionality of his ongoing detention during his immigration case. Additionally, although Petitioner's seven-month period of detention is not insignificant, this period does not approach the point (either due to the passage of time or due to unique case-specific circumstances) at which the resolution of his asylum application and removal proceedings "is of potentially indefinite duration" such that the due process clause of the Constitution mandates the right to a bond hearing.[5] Zadvydas, 533

---

[5] The majority of district courts across the country have found that, in some circumstances, a petitioner can succeed on an as-applied challenge to the constitutionality of an overly protracted § 1225(b)(1) detention period. See Leke, 521 F. Supp. 3d at 602 (finding that an "arriving alien already detained for 24 months" had the right a "prompt bond hearing before an Immigration Judge"); Uferk v. Brightman, No. 3:26cv2354, 2026 WL 1157166, at *2 (S.D. Cal. Apr. 28, 2026) (joining "the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process" (emphasis added) (quotation marks omitted)).

U.S. at 691; <u>cf.</u> <u>Demore v. Kim</u>, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring) ("Were there to be an unreasonable [government] delay . . . in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."). Because Petitioner fails to demonstrate that § 1225(b)(1) is inapplicable, or that its application is constitutionally suspect based on the facts of this case,[6] there is no basis for this Court to order immediate release, a bond hearing, or any other form of § 2241 habeas relief.

## C. Conclusion

For the reasons outlined above, Petitioner's § 2241 Petition is **DENIED without prejudice** to his right to file a future § 2241 petition should circumstances materially change. ECF No. 1.

The Clerk is **DIRECTED** to enter judgment in favor of the Federal Respondents pursuant to Federal Rule of Civil Procedure

---

[6] Petitioner does not advocate for the application of a specific legal test governing whether his seven-month detention is unconstitutional beyond the test applied in <u>Zadvydas</u>. <u>Cf.</u> <u>Castaneda</u>, 95 F.4th at 760 ("[T]he <u>Zadvydas</u> standard <u>is</u> due process" for challenges to detention under 8 U.S.C. § 1231). In light of Petitioner's status as an arriving alien, his detention for seven months, and the absence of any case-specific special circumstances, Petitioner's habeas claim fails regardless of the legal test applied. <u>Cf.</u> <u>Golloo v. Akshar</u>, No. 9:26cv401, 2026 WL 1110266, at *7 (N.D.N.Y. Apr. 24, 2026) (applying the three-factor due process test articulated in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976)); <u>Kydyrali v. Wolf</u>, 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020) (applying a six-factor test).

58, and forward copies of this Memorandum Order to Petitioner and to counsel for the Federal Respondents.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 4 , 2026

10